IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEON ALLEN WOODARD, III,<br>   Petitioner, | )<br>)<br>) | Civil Action No. 14-80 Erie |
| v. | )<br>) | Magistrate Judge Susan Paradise Baxter |
| JOHN THOMAS, et al.,<br>   Respondents. | )<br>) | |

# **OPINION**[1]

Presently before the Court is a petition for a writ of habeas corpus filed by state prisoner Leon Allen Woodard. [ECF No. 2]. For the reasons set forth below, the petition is denied and a certificate of appealability is denied on all claims.

## I.

### A. **Relevant Background**[2]

In 2010, an Erie County jury convicted Woodard of multiple drug trafficking offenses. His conviction arose out of an Erie Police Department investigation of drug trafficking activities at a residence on Tacoma Road. During the investigation, the officers used a confidential informant to make several controlled purchases of cocaine at the residence. The confidential informant identified Reneesha Nicole Evans and a male known as "E," who was later determined to be Woodard, as being two individuals associated with the sale of cocaine from the residence. The confidential informant reported

---

[1]   In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]   Respondents filed with the Court hard copies of the state court record. Those documents are indexed and numbered 1 through 34 and shall be cited herein as "SCR No. __ ." Respondents also filed the relevant transcripts.

1

that "E" was from Detroit and that he was staying with Evans. Commonwealth v. Woodard, No. 170 WDA 2012, slip op. at 2 (Pa.Super.Ct. Feb. 13, 2013).[3]

On April 21, 2009, officers obtained a search warrant for the Tacoma Road residence. The warrant also authorized a search of Evans and "E," and described "E" as a 5'6"-tall, black male in his thirties with a stocky build, braided hair, and a goatee. At 8:23 a.m. that morning, officers conducted a controlled purchase of cocaine at the residence, and established surveillance around it. At 5:15 p.m. that same day, officers observed a white Cadillac enter a parking lot near the residence. An individual, later identified as Woodard, exited the Cadillac from the front passenger side, while two other individuals remained in the car. Officers observed Woodard go to the residence, unlock the front door, enter the residence for several minutes, and then return to the Cadillac. As the car was pulling away, officers stopped it. Woodard attempted to flee on foot, but was quickly apprehended and detained by the police. Id. at 2-3.

The police seized from Woodard a set of keys that opened the front door to the Tacoma Road residence. They also found him to be in possession of $425.00, including two $20.00 bills used by the confidential informant in the controlled purchase that morning. The police seized from the residence numerous illegal drugs, including cocaine, heroin, BZP, oxycodone, marijuana, methadone and dihydrocodeinone. Officers also found Woodard's wallet and his Michigan identification in the bedroom of the residence. Id. at 3.

Following his arrest, Woodard was released on bail. Dennis V. Williams, Esquire, was his first attorney. Williams filed an omnibus pretrial motion to suppress all of the evidence seized due to what

---

[3] The Superior Court's decision is located at SCR No. 31. It also is attached to Woodard's petition. [ECF No. 2-1 at 1-15].

2

was contended to be a defective warrant. (SCR No. 3). Following an evidentiary hearing, the trial court denied that motion. (SCR No. 4).

Williams subsequently withdrew from representation and Jason Checque, Esquire, became Woodard's attorney. Woodard's case proceeded to a joint jury trial of Woodard, Evans, and a third co-conspirator. Woodard did not appear for any of the three days of trial. (3/16/10 Trial Tr. at 6-7). The trial court determined that his absence was voluntary and the trial against him proceeded *in absentia*. On March 18, 2010, the jury found him guilty of all charges. Woodard, No. 170 WDA 2012, slip op. at 3-4.

Woodard's sentencing hearing was held on April 29, 2010. Once again, Woodard failed to appear without cause. (4/29/10 Sentencing Hr'g at 2). The trial court sentenced him *in absentia* at Count 6 to a term of five to ten years of incarceration and at the other counts to lesser terms of incarceration to be served concurrently with the sentence at Count 6. Woodard, No. 170 WDA 2012, slip op. at 4.

Six days later, on May 5, 2010, the Commonwealth filed a motion to reconsider the sentence. (SCR No. 8). Attorney Checque filed a response opposing the Commonwealth's motion. (SCR No. 9). On June 1, 2010, the trial court conducted a hearing with respect to the motion. Woodard's fugitive status remained. At the conclusion of the hearing, the trial court amended its initial sentence on Count 1 and ordered that the three to six year mandatory minimum sentence for possession with intent to deliver cocaine on that count run consecutively to the five to ten year sentence previously imposed on Count 6. The amended sentencing order resulted in an increase in the aggregate term of imprisonment from five to ten years to eight to sixteen years. Woodard, No. 170 WDA 2012, slip op. at 4.

Attorney Checque did not file post-trial motions or a direct appeal. The time to file an appeal expired on or around July 1, 2010 (30 days after the trial court issued the amended sentencing order). On July 14, 2010, approximately two weeks after the time to file a direct appeal expired, Woodard was apprehended and taken into custody pursuant to a bench warrant. Id. at 5.

3

On June 24, 2011, Woodard filed a timely motion for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* through privately retained counsel, Scott Coffey, Esquire. (SCR Nos. 11, 16). The PCRA court denied Woodard's request for collateral relief (SCR Nos. 13, 17) and he filed an appeal with the Superior Court. In the appeal, James A. Pitonyak, Esquire, who was appointed by the PCRA court, represented Woodard.

In the appeal, Woodard raised the following five claims:

**Claim 1**  trial counsel was ineffective for failing to file post-sentence motions regarding the June 1, 2010, sentence modification;

**Claim 2**  trial counsel was ineffective for failing to file a post-sentence motion raising the issue of the weight or sufficiency of the evidence;

**Claim 3**  prior counsel was ineffective for failing to file a direct appeal to the Superior Court and argue that the trial court had committed error in trying Woodard *in absentia*.

**Claim 4**  Prior counsel was ineffective for failing to challenge the search warrant used to obtain evidence against Woodard either pre-trial, by preservation post-trial, or on appeal;

**Claim 5**  The June 1, 2010, amended sentence imposed by the trial court was illegal because it was vindictive.

(SCR No. 29).

On February 13, 2013, the Superior Court issued a decision in which it affirmed the denial of PCRA relief. With respect to **Claims 1**, **2 and 3**, the Superior Court held that Woodard forfeited his post-sentence and direct appeal rights when he was a fugitive throughout the time for preserving those rights. The court further held that Woodard could not avoid the consequence of his forfeiture by alleging that his counsel was ineffective for failing to preserve his appellate rights by way of post-trial motions and then a direct appeal. Woodard, 170 WDA 2012, slip op. at 9-11. The Superior Court held that since **Claim 4** was not premised upon counsel's failure to file post-trial motions or a direct appeal, it was not forfeited. Id. at 12 ("[S]ince [Woodard's] specific claim of ineffective representation [in **Claim 4**] could

4

not have been raised or considered in direct appeal, we find that it is cognizable under the PCRA notwithstanding his fugitive status during his direct appeal and will consider his argument."). The Superior Court denied **Claim 4** on the merits. Id. at 13-14. Finally, the Superior Court held that **Claim 5** was a challenge to the discretionary aspects of sentencing and that, therefore, Woodard waived it because it was not raised on direct appeal. The court also held that that claim was barred from review under the fugitive forfeiture rule. Id. at 14-15.

After the Supreme Court of Pennsylvania denied Woodard's request for a petition for allowance of appeal (SCR No. 34), he filed with this Court his petition for a writ of habeas corpus [ECF No. 2] pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under § 2254, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable in a federal habeas action. Id. See also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

In the petition, Woodard raises the same five claims that he raised to the Superior Court in his PCRA appeal. In their answer [ECF No. 7], Respondents contend that each of Woodard's claims should be denied. Woodard did not file a reply. See Local Rule 2254(E)(2) (a petitioner "may file a Reply ... within 30 days of the date the respondent files its Answer.")

**B.     Discussion**

**Claims 1, 2 and 3**

The Superior Court applied Pennsylvania's fugitive forfeiture doctrine to **Claims 1**, **2** and **3** and, as a result, it may be that this Court could deny them in this habeas case as procedurally defaulted.

5

Although the Respondents did not raise this defense in their answer, this Court has "the authority to raise the issue of procedural default *sua sponte*[,]" Evans v. Secretary Pennsylvania Dept. of Corr., 645 F.3d 650, 656 n.12 (3d Cir. 2011), as long as Woodard is given fair notice and an opportunity to respond and is not prejudiced. See Day v. McDonough, 547 U.S. 198, 205-10 (2006) (raising statute of limitations *sua sponte*); United States v. Bendolph, 409 F.3d 155, 161-70 (3d Cir. 2005) (en banc) (same); Sweger v. Chesney, 294 F.3d 506, 520 n.3 (3d Cir. 2002) (courts may consider *sua sponte* whether procedural default bars claim). This Court need not resolve the complex issue of procedural default, however, because **Claims 1**, **2** and **3** can be more efficiently disposed of on the merits. Therefore, those claims will be denied on the merits without regard to whether they are procedurally defaulted.

Evaluating **Claims 1**, **2** and **3** in this manner calls for the straightforward application of the test for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail under Strickland, Woodard has the burden of proving that his counsel's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[4] Id. at 687. The Supreme Court emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" Burt v. Titlow, — U.S. —, 134 S.Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). See also Harrington v. Richter, 562 U.S. 86, 104 (2011) ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the

---

[4] Since the Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, id. at 396, the Strickland standard applies to a claim that direct appeal counsel was ineffective. See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

6

'wide range' of reasonable professional assistance.") (quoting Strickland, 466 U.S. at 689). Strickland also requires that Woodard demonstrate that he was prejudiced by his counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial or direct appeal "would have been different." Strickland, 466 U.S. at 694. See also Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011) ("it is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial. The likelihood of a different result must be substantial, not just conceivable.") (internal quotations and citations omitted).

The Supreme Court in Strickland noted that although it had discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697. Consequently, if it is more efficient to dispose of an ineffectiveness claim on the ground that the petitioner failed to meet his burden of showing prejudice, this course should be followed. Id.

The Court will follow the Supreme Court's guidance and first consider whether Woodard has met his burden of establishing that he was prejudiced by the allegations of deficient representation that he makes in **Claims 1**, **2** and **3**. He has not. Given the evidence seized from Woodard and the Tacoma Road residence that was introduced at trial, Woodard has not demonstrated that there is a reasonable probability that the defense would have prevailed if Attorney Checque had filed a post-trial motion challenging the weight or sufficiency of the evidence. Nor has he shown that there is a reasonable probability that the defense would have prevailed if counsel had filed a post-sentence motion challenging the June 1, 2010, amended sentence. And, because Woodard remained a fugitive until after his direct appeal rights expired, the Superior Court would have quashed his appeal even if counsel had pursued one. Commonwealth v. Doty, 997 A.2d 1184, 1189 (Pa.Super.Ct. 2010) (where the appellant

7

was a fugitive during the time his 30-day direct appeal period expired, the Superior Court held that "[t]he fact that [the appellant's] counsel filed a notice of appeal during the appeal period is of no moment. [The defendant] could not resurrect his appellate rights because he failed to return to the court's jurisdiction prior to the expiration of the appeal period."); Commonwealth v. Hunter, 952 A.2d 1177, 1178-79 (Pa.Super.Ct. 2008) (quashing the appellant's appeal because he remained a fugitive from the time of his sentencing until after his counsel had filed an appeal and the appeal deadline passed).

Based upon all of the foregoing, Woodard has failed to meet his burden of showing that he was prejudiced by the allegations of ineffectiveness that he makes in **Claims 1**, **Claim 2** and **Claim 3**. For that reason, each of those claims is denied.

**Claim 4**

In **Claim 4**, Woodard faults his counsel for failing to attack the search warrant on the grounds that the description of the individual named "E" – who was later identified as being Woodard – did not match Woodard's description ("E" was described in the search warrant as being 5'6", while Woodard's height is 5' 10"). The Superior Court denied **Claim 4** on the merits. It held:

> The specificity requirement for the description of individuals subject to a search warrant is "tempered by the rule that search warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." Commonwealth v. Johnson, 33 A.2d 122, 125 (Pa.Super. 2011) (citation and internal quotation omitted), appeal denied, 47 A.3d 845 (Pa. 2012). Therefore, a description of an individual named in a warrant will be sufficient when he is "described precise[ly] enough to enable the executing officer to ascertain and identify, with reasonable effort, the [person] intended, and where probable cause exists to support the search of [the person] so designated, a warrant will not fail for lack of particularity." Id. (citation and internal quotation omitted).
>
> Following our review, we find Appellant's underlying challenge to the search warrant based on a four-inch discrepancy between the height of the unknown suspect described in the warrant and his actual height to be frivolous. Moreover, even if we were to conclude that the four-inch height discrepancy in the search warrant against Appellant was relevant to the question of the legality of his seizure, his conduct at the time the

8

warrant was executed, namely, repeated [sic] entering the locked residence and attempting to flee from officers following the stop of the Cadillac, provided ample independent corroboration to detain Appellant notwithstanding the minor inaccuracy in the search warrant. Thus, the trial court properly found no arguable merit to this claim of ineffective assistance of counsel, and no appellate relief is due.

Woodard, No. 170 WDA 2012, slip op. at 13-14 (bracketed text in original).

Because the Superior Court denied **Claim 4** on the merits, this Court's review of it is governed by AEDPA's standard of review, which reflects the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." See, e.g., Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). Under AEDPA, this Court may not review **Claim 4** *de novo*. Nor is it for this Court to decide whether the Superior Court's decision was right or wrong. Rather, under AEDPA's standard of review, which is codified in relevant part at § 2254(d)(1), it is Woodard's burden to demonstrate that the Superior Court's adjudication "resulted in a decision that was **contrary to, or involved an unreasonable application of**, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. §2254(d)(1) (emphasis added).[5]

As set forth above, the "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze the allegation of ineffectiveness in **Claim 4** is governed by Strickland. In relevant part, "[t]he test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that

---

[5] Section 2254(d)(2) provides the standard of review for issues of fact, and it permits habeas relief only if the petitioner demonstrated that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). BRIAN R. MEANS, FEDERAL HABEAS MANUAL §§ 3:73-74, § 3:79, WestlawNext (database updated June 2015). Claim 4 does not involve an issue of fact. Therefore, § 2254(d)(2)'s standard of review does not apply to this case. If § 2254(d)(2) did apply, Woodard could not overcome it because it cannot be said that the Superior Court's adjudication of Claim 4 resulted "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

9

contradicts the governing law set forth in [the Supreme Court's] cases[.]'" Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (quoting Brown v. Payton, 544 U.S. 133, 141 (2005), which cited Williams v. Taylor, 529 U.S. 362, 405 (2000) and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). The Superior Court applied the Strickland standard when it evaluated Claim 4, Woodard, No. 170 WDA 2012, slip op. 13,[6] and, therefore, its adjudication easily withstands review under the "contrary to" clause of § 2254(d)(1). Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The only remaining inquiry for the Court is whether Woodard has established that the Superior Court's adjudication was an "unreasonable application of" Strickland. His burden here is also very difficult to meet. The Supreme Court held that "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington, 562 U.S. at 102. The Supreme Court instructed that § 2254(d)(1)'s "unreasonable application" clause:

> preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further…. **As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.**

Id. at 102-03 (emphasis added). The Supreme Court also explained:

---

[6] Pennsylvania courts apply the Strickland standard when evaluating ineffective assistance of counsel claims. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," [<u>Strickland</u>, 466 U.S.] at 689; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, [<u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009)]. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. [<u>Id.</u>] Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.**

<u>Id.</u> at 105 (parallel citations omitted) (emphasis added).

Because Woodard has not established that the Superior Court's decision to deny **Claim 4** "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" <u>id.</u> at 103, this Court cannot conclude that it was an "unreasonable application of" <u>Strickland</u>. Accordingly, **Claim 4** is denied.

**Claim 5**

In **Claim 5**, Woodard contends that the trial court's June 1, 2010, amended sentence was illegal because it was the product of judicial vindictiveness. The Superior Court held that this claim was both waived and barred from review under Pennsylvania's fugitive forfeiture rule. <u>Woodard</u>, No. 170 WDA 2012, slip op. at 14-15. As was the case with **Claim 1**, **2** and **3**, it may be that this Court could deny **Claim 5** because it is procedurally defaulted. However, because it is more efficient to resolve it on the merits, this Court will pursue that course.

Sentencing is a matter of state criminal procedure that does not fall within the purview of federal habeas review. See, e.g., <u>Chapman v. United States</u>, 500 U.S. 453, 465 (1991); <u>Jones v. Superintendent of Rahway State Prison</u>, 725 F.2d 40, 42-43 (3d Cir. 1984). Thus, unless an issue of constitutional dimension is implicated in a sentencing argument, <u>see</u>, <u>e.g.</u>, 3 Charles A. Wright, et al., Federal Practice

11

and Procedure: Crim. § 550, Constitutional Limits on the Sentencing Decision, available on WestlawNext (4th ed. last updated Apr. 2015), this Court is without power to grant habeas relief.

Under North Carolina v. Pearce, 395 U.S. 711 (1969) and its progeny, a rebuttable presumption of vindictiveness applies when a defendant receives a more severe sentence after having exercised his right **to appeal**. This presumption is limited to those cases where the circumstances demonstrate a "reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." Alabama v. Smith, 490 U.S. 794, 799 (1989) (internal quotation marks and citation omitted). Thus, if a judge imposes a harsher sentence after a successful appeal or collateral attack and the circumstances suggest a reasonable likelihood of vindictiveness, then "the reasons for [the increased sentence] must affirmatively appear." Pearce, 395 U.S. at 726 (internal quotation marks and citation omitted).

"Although the Supreme Court has not yet spoken directly on the issue, lower courts also apply the Pearce rule to resentencing to correct an invalid sentence before appeal (as opposed to resentencing following the appeal of an invalid conviction)." 6 WAYNE R. LAFAVE, ET AL., Criminal Procedure § 26.8(c) (4th ed.), WestlawNext (database updated Dec. 2015) (citing Plumley v. Austin, 135 S.Ct. 828 (2015) (Thomas, J., dissenting from denial of certiorari) (describing the "confusion" in the lower courts about whether a ruling from a higher tribunal is necessary before the presumption will be triggered, noting "[o]ur precedents have created this confusion, first by endorsing a presumption that is at odds with the respect we ordinarily accord our Nation's judges, and then by chipping away at that presumption in a piecemeal fashion.")). Pennsylvania is one of those jurisdictions that may apply the Pearce rule to situations in addition to resentencing required because the defendant received relief on appeal, such as when a defendant files a motion for sentencing modification. See Commonwealth v. Robinson, 931 A.2d 15, 22 (Pa.Super.Ct. 2007) (en banc) ("The prohibition against vindictiveness is

designed to prevent courts from punishing defendants for freely exercising their legal rights.") (citation omitted). In Commonwealth v. Hernandez, 783 A.2d 784 (Pa.Super.Ct. 2001), the case upon which Woodard relies, the Superior Court quoted Commonwealth v. Serrano, 727 A.2d 1168 (Pa.Super.Ct. 1999), and explained:

> Upon revocation, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing. 42 Pa.C.S.A. § 9773. At resentencing, therefore, the procedural posture of the case is just as it is for sentences following guilty pleas, jury trials and nonjury trials. A defendant's procedural rights following resentencing include the right to timely request modification of sentence. While this request may be granted or denied, once granted, review of the sentence is subject to statutory and case law. First, a resentence may not exceed the statutory limits of the sentence, including allowable deductions for time served. In addition, a resentence following a motion for modification may not exceed the previous sentence without justification. Where a subsequent sentence imposes a greater penalty than previously was imposed, a presumption of vindictiveness attaches. Commonwealth v. Campion, 449 Pa.Super. 9, 672 A.2d 1328 (1996). [W]henever a judge imposes a more severe sentence upon a defendant … the reasons for doing so must affirmatively appear. Id., 672 A.2d at 1333, quoting North Carolina v. Pearce, 395 U.S. 711, 725-26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In order to overcome the presumption of vindictiveness, the sentencing court's reasons must be based upon objective information which justifies the increased sentence. Id.

Hernandez, 783 A.2d at 787 (quoting Serrano, 727 A.2d at 1170).

As Respondents point out, in Hernandez it was the defendant that filed a motion to reconsider sentence, while in this case it was the Commonwealth that filed the motion. That distinction is important. In Commonwealth v. Robinson, 931 A.2d 15 (Pa.Super.Ct. 2007) (en banc), the Commonwealth filed the motion to reconsider sentence. The Superior Court noted that "[g]iven that the trial court has the discretion to modify its own sentence in response to a Commonwealth motion for reconsideration, we are disinclined to apply a presumption of vindictiveness." Robinson, 931 A.2d at 24. The Superior Court in Robinson went on to state that, "even assuming arguendo that the presumption did apply, … we conclude that the trial court adequately justified the increase in sentence." Id. That is also the case here.

At the June 1, 2010, hearing on the Commonwealth's motion, the trial court asked the prosecutor if it was the Commonwealth's position "that nothing less than the application of all these mandatories in a consecutive fashion would be justice?" (6/1/10 Hr'g Tr. at 3). The prosecutor replied:

> That's not my position. I asked for all mandatories initially in a consecutive fashion, and I understand that's extreme. However, I do feel that the sentence [Woodard and his co-defendant] were given … was too lenient.
>
> I think it doesn't reflect the magnitude of the actual crimes, the amount of drugs, and the weight of the drugs, that they were convicted of running basically a drug operation out of this residence, bringing the drugs in from Detroit. And there was a firearm [in] the vicinity of the drugs. And these two individuals basically snubbed their nose[s] at the court and law enforcement in the county and said, we are not going to show up for any of these proceedings.

(Id.) The trial court then stated:

> Having heard from everyone, here is what I conclude. First of all, I have a motion for reconsideration. It comes from the district attorney's office, a litigant before the court, but a litigant who's never exhausted their frequent flier coupon. When one is filed, since I don't have a litigious litigant … that deserves another great look…. I am open to the possibility I erred. I believe I did err. There is a tension here between the legislature's power to set mandatory sentences, which they have done in almost every one of these counts with the exception of Counts Five and Eight. They are all mandatory minimums. When the legislature set those, obviously they were exercising their power. I am not free to challenge them.
>
> But when they arise in a case, one on top of the other on top of the other, to blindly apply them in a consecutive fashion, to be aggregate, my role is to fashion an appropriate sentence. There is the song, All or Nothing at All. When I passed sentence, I was struggling with that, what was I going to do, but I conclude I erred, that the defendant[s]' failure to show up for trial, their fugitive status, all indicates that a more severe sentence than the one I imposed is appropriate here.
>
> I am going to do the following: I am going to amend the sentence I previously imposed, to increase it. And I am going to take Count One, possession with intent to deliver cocaine, both as to Mr. Woodard's and Miss Evans, that sentence was at the time concurrent. It is now consecutive, which increases the sentence from the original five to ten, now to an additional three on the bottom and eight to 16. The maximum I could impose here, if I imposed all the mandatories on top, would be 15 to 30. I still think that's too much, but I do think that the modified sentence is appropriate. I could tinker further, but that strikes where the balance should be.

14

> I have given careful consideration to everybody's points of view, and I am going to enter an amended sentencing order.

(Id. at 5-7).

Based upon all of the foregoing, the Court concludes that **Claim 5** is denied because Woodard has not demonstrated that a presumption of vindictiveness should be applied to his resentencing, which was prompted by the Commonwealth's motion for reconsideration and not his. Even if the presumption of vindictiveness did apply here, however, the trial court adequately set forth its reasons for increasing Woodard's sentence sufficient to overcome it, and Woodard has not met his burden of proving actual vindictiveness without the aid of the presumption. For both of those reasons, Woodard has not established that he was resentenced on the basis of vindictiveness in violation of his due process rights.

## **C.** **Certificate of Appealability**

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether each of Woodard's claims should be denied. Accordingly, a certificate of appealability is denied.

## **II.**

For the reasons set forth above, Woodard's claims are denied and a certificate of appealability is denied on all claims.

An appropriate Order follows.

                                                                     /s/ Susan Paradise Baxter
Dated: April 4, 2016                       SUSAN PARADISE BAXTER
                                                              United States Magistrate Judge